**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3228
_____

ELWOOD SMALL;
PEARLIE DUBOSE, JR.,
Appellants

v.

JOHN WETZEL, Secretary of the Pennsylvania Department
of Corrections in his Official Capacity; DAVID PITKINS, Superintendent of the State
Correctional Institution at Laurel Highlands, in his Official and Personal Capacities;
TIM PLEACHER, Deputy Superintendent for Centralized Services at SCI-Laurel
Highlands,
in his Official and Personal Capacities; WILLIAM MAILMAN, Classification and
Program Manager
for SCI-Laurel Highlands in his Official and Personal Capacities; LIEUTENANT
CONTI;
HARRY MAUST; JOHN DOES 1-4
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 3-12-cv-00083)
District Judge:  Hon. Kim R. Gibson

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 16, 2013

Before:  SMITH, FISHER, and CHAGARES, <u>Circuit Judges</u>.


(Filed: June 11, 2013)


_____

OPINION
_____

CHAGARES, Circuit Judge.

Elwood "Atheem" Small and Pearlie DuBose, Jr. appeal the order of the District Court for the Western District of Pennsylvania granting the motion to dismiss their claims brought under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq. Small and DuBose allege that their rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution were violated when they were strip-searched in the presence of women and when their participation in religious holiday events was, according to prison policy, conditioned upon their signing a document that allegedly placed restrictions on their religious practice. They also allege a violation of their rights under the Equal Protection Clause because inmates practicing another religion were not subject to restrictions on their practice. For the reasons that follow, we will affirm the District Court's order in large part and vacate and remand as to the dismissal of the equal protection claim.

I.

Small and DuBose are practicing Muslims who, at the time when the events underlying this matter took place, were incarcerated at the State Correctional Institution at Laurel Highlands ("SCI-Laurel Highlands"). Both Small and DuBose were housed in D-Unit, a medical unit at SCI-Laurel Highlands that houses inmates with medical conditions as well as some inmates with general-population status who assist with the care of patients in the unit. D-Unit keeps a staff of nurses onsite full-time. Small and

2

DuBose's complaint focuses on two circumstances at the prison involving their observance of Islam, which, they allege, violated their constitutional rights.

The first occurred on October 5, 2009, when the prison was placed under general lockdown and all inmates in D-Unit were strip-searched. Defendant Lieutenant Conti was the superior officer on that day, and Harry Maust, a maintenance worker, allegedly ordered Small, DuBose, and other inmates to remove their clothes, spread their buttocks, and lift their penises to facilitate the search. Maust was allegedly accompanied by corrections officers as well as female civilian staff. Small and DuBose each asked to have the strip search performed in the nearby shower area or behind a curtain instead of their open cubicles, because Islam prohibits men from being naked in front of women other than their spouses. Small and Dubose claim that Maust and the corrections officers threatened them with reassignment to the Restrictive Housing Unit and handcuffing if they did not comply with the search. They further note that the search violated the strip-search policy of the Pennsylvania Department of Corrections, which provides that "[a] strip search should be conducted in an area separate from other inmates and to assure privacy and minimum embarrassment. Absent exigent circumstances, same gender correctional personnel shall search inmates." App. 71a.

The second circumstance at SCI-Laurel Highlands giving rise to the complaint at issue concerns the prison's policy for observance of Ramadan, a holy month in Islam. The claims related to the Ramadan policy are Small's, and do not include DuBose. As alleged in the complaint, meals and hydration are only permitted during nighttime hours during Ramadan. Moreover, the complaint alleges, observance of Ramadan requires

3

participation in nightly prayers and a feast at the end of the month called the Eid-al-Fitr. SCI-Laurel Highlands provides for the observance of Ramadan by designating a time for community prayer each evening, providing observing inmates with a bag of food known as a Sahur bag to be consumed at night, and by allowing participation in the Eid-al-Fitr feast for a fee of ten dollars.

Participation in the prison's Ramadan program requires inmates to sign a document called "Guidelines for Participation in Ramadan at SCI-Laurel Highlands" (the "Guidelines"). App. 69a. The Guidelines require an inmate to indicate whether he will attend nightly fast-breaking and prayer with a group of inmates, or break fast and pray in his cell. The Guidelines indicate in boldface that "[n]o changes will be made after the start of Ramadan." Id. The Guidelines also stipulate that "[p]articipants who are medically cleared *must* fast from food and drink from sunrise to sunset for the month of Ramadan." Id. By signing the Guidelines, an inmate acknowledges that "any violation of these guidelines (as outlined above) may result in the institution no longer accommodating my participation in Ramadan and/or the Eid feasts." Id.

Small argues before this Court, as he alleged in the complaint, that "Islam permits a Muslim who breaks fast to make up such fast time on other days in the following year prior to the next observance of Ramadan." Small Brief ("Small Br.") 10. In fact, Small claimed that Islam requires its followers to continue to participate in evening prayers and the Eid-al-Fitr prayers and feast, as they are "not excused from such duties merely for breaking fast." App. 52a. However, the Ramadan policy ("Ramadan Policy") of SCI-Laurel Highlands articulated in the Guidelines does not acknowledge the possibility that

4

an inmate might observe Ramadan even while breaking fast on occasion. As a result, Small refused to sign the Guidelines, and alleged that he was "denied full rights to participate in group prayers in observance of Ramadan." Id.

John Wetzel, David Pitkins, Tim Pleacher, William Mailman, Lieutenant Conti, and Harry Maust (collectively, the "defendants") filed a motion to dismiss Small and DuBose's complaint, which the Magistrate Judge recommended be granted. The Magistrate Judge's Report and Recommendation also indicated that the defendants are protected from suit by qualified immunity. Pursuant to 28 U.S.C. § 636(b)(1), the Magistrate Judge allowed the parties to file written objections to the Report and Recommendation, which Small and DuBose did. The Magistrate Judge then issued a Supplement to the Report and Recommendation, and the District Court adopted the Report and Recommendation, and dismissed all of Small's and DuBose's claims for failure to state a claim upon which relief can be granted.

## II.

The District Court had jurisdiction over this matter under 28 U.S.C. § 1331, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of the defendants' motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). In so doing, "[w]e take as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them, . . . but we disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements." Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quotation marks omitted). "[W]hen the plaintiff pleads

5

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has "facial plausibility" and the complaint will survive defendant's motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Furthermore, "[w]e review the district court's grant of qualified immunity de novo as it raises a purely legal issue." Burns v. PA Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011).

III.

Small and DuBose argue that the October 5, 2009 strip search in the presence of female prison staff violated their Fourth Amendment right to be free of unreasonable search and seizure. They brought these claims before the District Court pursuant to 42 U.S.C. § 1983 (and, we presume, the Fourteenth Amendment).[1] The Supreme Court has recently underscored that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities. . . . The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials," so that, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations[,] courts should ordinarily defer to their expert judgment in such matters." Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 132 S. Ct. 1510, 1517 (2012) (quotation marks omitted). Florence applies the balancing test laid out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520

---

[1] Although Small and DuBose also alleged in their complaint that the strip search violated their rights under the Free Exercise Clause of the First Amendment, they do not seek this Court's review of the District Court's dismissal of that claim.

6

(1979), to the strip-search context. In <u>Bell</u>, the Court held that ascertaining the reasonableness of prison-security measures under the Fourth Amendment requires courts to consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." <u>Id.</u> at 559.

Applying this balancing test, the Supreme Court in <u>Florence</u> held that it is constitutional to conduct a full strip search of an individual detained in the general population of a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something. Contrary to Small and DuBose's position, the distinguishing fact that <u>Florence</u> concerned the strip search of an individual held in jail while his case was being processed, rather than the strip search of an individual serving his sentence for a crime of which he was convicted (as in Small and DuBose's case), does not weigh in their favor. <u>See</u> <u>Bell</u>, 441 U.S. at 546 (explaining that the need for "a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application . . . . applies equally to pretrial detainees and convicted prisoners." (quotation marks omitted)).

For Small and DuBose's purposes, a more important distinguishing fact is that, in <u>Florence</u>, the holding that inmates may be strip searched on entering a prison population was based on the principle that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." <u>Florence</u>, 132 S.Ct. at 1516. But although that rationale is absent from the instant case, here we confront a strip search conducted during a prison lockdown — an emergency situation where it is not unreasonable to conduct a strip search in groups.

7

Small and DuBose did not plead in their complaint that the lockdown involved anything but the urgency and tension generally ascribed to a lockdown. The fact that female staff members from SCI-Laurel Highlands were present does not outweigh the need for safety and expediency in an emergency circumstance. The policy of the Pennsylvania Department of Corrections appears to reflect that the widely-favored same-gender strip searches would be conducted in non-emergency circumstances. See App. 71a ("Absent exigent circumstances, same gender correctional personnel shall search inmates."). For these reasons, we do not hold that the mere presence of women during the lockdown strip search on October 5, 2009 rendered the searches unconstitutional.

IV.

Small also argues that the requirements of the Ramadan policy at SCI-Laurel Highlands violated his rights under RLUIPA and the First Amendment. RLUIPA provides, in relevant part, as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person[] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). This Court has held that

> [f]or the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR

8

> 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007). Small contends that the prison's Ramadan Guidelines place a substantial burden on his religious observance because they prohibit a Muslim who breaks fast on one day from fulfilling his or her duty to continue with nightly prayer and participate in an Eid-al-Fitr feast nonetheless. Because RLUIPA does not allow for the recovery of money damages, Small seeks only injunctive and declaratory relief prohibiting enforcement of the Ramadan Policy. See Sharp v. Johnson, 669 F.3d 144, 154 (3d Cir. 2012) ("RLUIPA does not permit an action against Defendants in their individual capacities; [t]hus, RLUIPA cannot impose direct liability on Defendants.").

The defendants rejoin, and the District Court held, that Small's claim is moot, because Small was transferred from SCI-Laurel Highlands to a different institution within the Pennsylvania correctional system. Small contends that the Guidelines governing Ramadan participation at SCI-Laurel Highlands appear to be Guidelines established throughout the Pennsylvania Department of Corrections, not just at SCI-Laurel Highlands. However, the record does not bear this out. See App. 67a (Ramadan Procedure labeled "Commonwealth of Pennsylvania Department of Corrections[,] State Correctional Institution at Laurel Highlands"); see also App. 69a ("Guidelines for Participation in Ramadan at SCI-Laurel Highlands"). Although it is possible that the correctional institution where Small is currently incarcerated might have a Ramadan policy with the same requirements as those in place at SCI-Laurel Highlands, Small did

9

not allege this in his complaint. We hold, therefore, that the actual-controversy requirement of Article III is not met in this case because Small lacks standing to bring suit for prospective relief under RLUIPA. See McNair v. Synapse Grp. Inc., 672 F.3d 213, 223 (3d Cir. 2012) (indicating that Article III standing requires, among other things, that the plaintiff establish a concrete, particularized injury-in-fact that is "actual or imminent, not conjectural or hypothetical," and explaining that when "prospective relief is sought, the plaintiff must show that he is likely to suffer future injury from the defendant's conduct" (quotation marks omitted)). Accordingly, the District Court properly dismissed Small's RLUIPA claim concerning the Ramadan Policy.

The same is true of Small's request for injunctive and declaratory relief as to his claims that the Ramadan Policy violated his rights under the Free Exercise Clause of the First Amendment, and his equal protection claim, alleging discriminatory treatment of Muslim inmates observing Ramadan as compared with Jewish inmates practicing Judaism in violation of the First and Fourteenth Amendments and RLUIPA. Because these allegations all concern the Ramadan Policy in place at SCI-Laurel Highlands, where Small is no longer an inmate, we hold that Small does not have standing to seek injunctive relief.

As to Small's claim for monetary relief because of the Ramadan Policy, we will affirm the District Court's dismissal because we hold that the Guidelines do not violate his First Amendment right to exercise his religion freely. The Supreme Court held in Turner v. Safley that "a prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." 482 U.S.

10

78, 89 (1987).  The following factors are relevant to determining whether such a reasonable relation exists:

> (1) [T]here must be a valid, rational connection between the prison regulation and the legitimate, neutral governmental interest put forward to justify it (the 'First Turner Factor'); (2) whether the inmate has alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at de minimis cost to valid penological objectives.

Sharp v. Johnson, 669 F.3d 144, 156 (3d Cir. 2012) (quotation marks omitted).  We have held that satisfaction of the first Turner factor is a threshold inquiry before the other factors can be considered, and we have placed the burden of proving the first Turner factor on prison officials.  Id.  Here, the defendants argue that the Ramadan Policy protects against serving extra meals to inmates who claim to be observant Muslims but in fact break daytime fast and eat the nighttime Ramadan meal.  Defendants' Brief ("Defs.' Br.") 23.  Moreover, they explain that the policy prevents inmates who are not observant Muslims from "moving out of their cells during the predawn hours of darkness."  Id.  We hold that the defendants have met their "slight" burden, Sharp, 669 F.3d at 156, of showing that a valid, rational connection exists between the Ramadan Policy and its justifying governmental interests — namely, "ensur[ing] cost effectiveness, preservation of resources, and the general good order of the prison, as well as the maintenance of institutional authority," Defs.' Br. 25.

Balancing the remaining Turner factors, we likewise hold that the Ramadan Policy is reasonably related to legitimate penological interests.  In Turner, the Supreme Court

11

emphasized that, where "other avenues remain available for the exercise of the asserted right, . . . courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." Turner, 482 U.S. at 90. In the instant case, the Ramadan Policy permitted Small to observe Ramadan in accordance with the requirements of Islam, but did not allow Small to observe the particular provision of Islam that allows an observing Muslim to break fast on occasion during Ramadan and make it up later in the year. Thus there was an "alternative means" of observing Ramadan available to Small, which means that, as to the second Turner factor, we must defer to the corrections officers in evaluating the constitutionality of the Ramadan policy. Furthermore, an accommodation that would require the prison to determine which Muslim inmates had broken fast on a given day, and accordingly withhold a nighttime meal from an observant Muslim, would appear to place a noticeable burden on prison officials. Therefore, the third Turner factor also weighs in favor of a holding that the restriction on Small's religious practice is reasonably supported by a legitimate penological objective. Finally, the Turner Court made clear that the fourth factor (whether ready alternatives exist) "is not a 'least restrictive alternative' test." Id. at 90. We do not doubt that Small's suggestion of providing nighttime meals only when an inmate has not broken fast would allow inmates to observe Ramadan in accordance with more of the holy month's provisions as Small represents them. However, given the deference owed to prison officials in determining how best to use their resources to keep an orderly and safe facility, we hold that the Ramadan Policy does not violate Small's First Amendment rights.

12

Small claims, finally, monetary damages arising out of violation of his right to equal protection under the Fourteenth Amendment. Small alleges that "Defendants' actions have singled out the Muslim religion as against other religions for discriminatory treatment," as "Jews who participate in holy days of fasting and feasting are not required to sign a comparable restriction to the Ramadan Participation Sheet." App. 59a. Although the Magistrate Judge found, and the District Court adopted the view, that "Small offers no allegations of fact — not one — just a bald and noxious conclusion that 'Jews' get better treatment," App. 31a, it appears clear to us that the complaint outlines the Ramadan Policy in great detail, alleges that Jewish inmates also have holy days of fasting and feasting, and charges that Jewish inmates are not required to sign forms like the Guidelines in order to participate in those holy days. We hold that this is sufficient to make out an equal protection claim in this context, as the prison's policy regarding Jewish holy days is precisely the kind of information that a non-Jewish inmate would seek to obtain during the discovery phase of litigation. Fowler, 578 F.3d at 211 ("This plausibility determination will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." (quotation marks omitted)).

Small seeks compensatory, nominal, and punitive damages against the defendants for the alleged violation of his rights under the Equal Protection clause. Because the complaint pleads no injury compensable by monetary damages, we will affirm the dismissal of Small's claim for compensatory damages. Furthermore, we hold that Small has not stated a plausible claim for relief in the form of punitive damages. This Court has explained that an award of punitive damages requires a showing of "reckless or callous

13

disregard of, or indifference to, the rights and safety of others," and must be "reserved for special circumstances." Keenan v. City of Phila., 983 F.2d 459, 469-70 (3d Cir.1992). Small has not alleged that the defendants exhibited the recklessness or callousness necessary to allow a claim for punitive damages to proceed. Accordingly, we will vacate the District Court's order only as to Small's claim for nominal damages for the alleged violation of his equal protection rights.

V.

For the foregoing reasons, we will affirm in part and vacate and remand in part.